IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| AARON JONES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 1:10cv521 (JCC/JFA) |
| ) | |
| NATIONWIDE MUTUAL INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Nationwide Mutual Insurance Company's ("Defendant") Motion for Summary Judgment [Dkt. 27]. For the following reasons, the Court will grant Defendant's Motion for Summary Judgment.

**I. Background**

A. Factual Background

This case arises from a personal injury lawsuit brought by Plaintiff Aaron Jones ("Jones") against Plaintiffs Sang Jun ("Jun") and Jung Jae Park ("Park") on August 6, 2005. (Amended Complaint ("Compl.") [Dkt. 14] ¶ 11.) On or about August 14, 2002, Jones was walking in Washington, D.C., when he was struck by a vehicle owned by Jun and operated by Park. (Compl. ¶ 8.) On that date, Jun was the owner and/or officer of ABC Dental Lab, Inc. ("ABC"), and Park was an ABC employee

1

operating within the scope of his employment at the time of the accident. (Compl. ¶¶ 8-10.)

Defendant underwrote an insurance policy issued to ABC (the "Policy"), which covered, among other things, any bodily injury or property damage arising out of the use of any "non-owned auto." (Compl. ¶ 15.) Plaintiffs allege the Policy covered the loss sustained as a result of the August 14, 2002 accident. (Compl. ¶ 16.) Defendant disputes that Jun and Park qualified as "insureds" under the Policy for purposes of the losses resulting from the accident. (D. MSJ[1] at 1.)

As a result of injuries sustained from the accident, Jones filed a tort action in the Superior Court for the District of Columbia on August 6, 2005, styled *Aaron Jones v. Jung Jae Park, et al.*, Case No. 2005 CA 003945 (the "Tort Action"). (Compl. ¶ 11-12.) On September 9, 2008, a $250,000.00 consent judgment was entered against Jun and Park in the Tort Action (the "Judgment"). (Compl. ¶ 13.) The Judgment was entered pursuant to a Settlement and Release Agreement, dated August 5, 2008, entered into by Jun and Park, defendants in the Tort Action and Plaintiffs here, and Jones, plaintiff in the Tort Action and Plaintiff here (the "Settlement Agreement"). (D. Exs.[2] C, D at 1.)

---

[1] Defendant's Memorandum of Points and Authorities [Dkt. 28] will be referred to as "D. MSJ."
[2] Exhibits attached to Defendant's Memorandum of Points and Authorities will be referred to as "D. Ex. []".

The Settlement Agreement provided a blanket release of Jones's claims against Jun and Park in exchange for the Judgment. It states, in relevant part:

> 4. <u>Release</u>. . . . [Jones] does hereby release and forever discharge [] Jun and [] Park . . . from any and all Claims or Causes of Action, whatsoever, . . . which [Jones] has or may have . . . arising from or any way related to any occurrences or transactions which are a subject of [the Tort Action], except such rights as are conferred by Paragraph 3 of [the Settlement Agreement].

(D. Exs. C, D at 6.) The terms "Claims" and "Cause of Action" are defined broadly in the same paragraph of the Settlement Agreement to mean, effectively, all rights, obligations, or liabilities whatsoever. (D. Ex. at 2.) The relevant portions of Paragraph 3 of the Settlement Agreement provide that Jun and Park would deliver a consent judgment to Jones in the amount of $250,000.00 and would "transfer and assign to [Jones] all claims, rights, Causes of Action they may have against any . . . insurers which [sic] arise from or are related to the facts set forth in the [Tort Action]." (D. Exs. C, D at 5.) For his part, Jones:

> agre[ed] not to execute on these consent judgments against [Jun and Park] except to the extent that such execution may be satisfied by other insurers or entities as part of those claims, rights, or causes of actions [sic] transferred and assigned to [Jones] as part of [the Settlement Agreement].

3

(D. Exs. C, D at 4.)  The Settlement Agreement further provided that Jun and Park "make no representations, warranties, or promises about the existence or related viability of any [] claims, rights or causes of action" that they transferred to Jones pursuant to the Settlement Agreement.  (D. Exs. C, D.)

    B.    <u>Procedural Background</u>

On April 14, 2010, Plaintiff Jones filed a complaint against Defendant in the Circuit Court for Fairfax County, Case No. CL-2010-5401.  [Dkt. 1-1.]  Defendant removed the case to this Court on May 20, 2010.  [Dkt. 1.]  Plaintiffs filed a one-count Amended Complaint on August 18, 2010 (the "Complaint"), alleging breach of contract, and adding Jun and Park as Plaintiffs.  [Dkt. 14.]  On November 4, 2010, Defendant filed its Motion for Summary Judgment. [Dkt. 25.]  On November 16, 2010, this Court ordered Defendant to send to *pro se* Plaintiffs the proper notice required by *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(k).  [Dkt. 26.]  On November 17, 2010, Defendant filed a new Motion for Summary Judgment (the "Motion") containing such notice.  [Dkt. 27.]  Plaintiffs did not oppose the Motion and did not appear at oral argument on December 3, 2010.  Defendant's unopposed Motion is now before the Court.

4

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is

appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

Plaintiffs' Complaint alleges that in failing to pay the outstanding portion of the Judgment, Defendant breached the Policy. Defendant argues that because Jun and Park are not legally obligated to pay any monetary sum to Jones as a result of the Settlement Agreement, Defendant is not required to provide any coverage pursuant to the terms of the Policy.

A. <u>Governing Law</u>

As the issues from this case arise from two contracts, as an initial matter, the Court must determine what law governs their respective terms.

As to the Policy, the law is well-settled. A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules. *Colgan Air,*

6

*Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). Virginia follows the general principle that an insurance contract is interpreted pursuant to the law of the place where the policy was delivered. *Buchanan v. Doe*, 246 Va. 67, 70, 431 S.E.2d 289, 291 (1993). The Policy was issued by the Defendant's representative issuing office in Lynchburg, Virginia, by an agent located in Fairfax, Virginia. Therefore, the Policy is governed by Virginia law, and in Virginia, "[c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document." *Copp v. Nationwide Mut. Ins. Co.*, 279 Va. 675, 681, 692 S.E.2d 220, 223 (2010) (internal citation marks and quotations omitted).

As to the Settlement Agreement, it contains a choice of law provision designating District of Columbia law as governing its construction, interpretation, and enforcement. (D. Exs. C, D.) Accordingly, this Court will apply the substantive law of the District of Columbia in interpreting the Settlement Agreement, as "[t]he law of Virginia favors contractual choice of law provisions, giving them full effect except in unusual circumstances." *Ettinger v. Milvets Sys. Tech., Inc.*, 38 F. App'x 962, 965 (4th Cir. 2002) (citing *Tate v. Hain*, 181 Va. 402, 410 25 S.E.2d 321, 324 (1943)).

The D.C. court has recently "reiterated [its] 'adhere[nce] to the doctrine that releases are contracts and should be construed according to established rules of contract interpretation.' In that regard, [D.C. courts] "look to 'the parties' intentions as paramount' in interpreting the release."[3] *Convit v. Wilson*, 980 A.2d 1104, 1114-115 (D.C. 2009) (quoting *Noonan v. Williams*, 686 A.2d 237, 240 (D.C. 1996)). "If the release is facially unambiguous, we must rely solely upon its language as providing the best objective manifestation of the parties' intent." *Noonan v. Williams*, 686 A.2d 237, 241 (D.C. 1996) (citation omitted).

B. <u>Legally Obligated to Pay</u>

Defendant's argument has two prongs. First, that any rights Jones has under the Policy would arise from the assignment to Jones of Jun and Park's rights under the Settlement Agreement, and the Policy prohibits the assignment of rights without Defendant's written consent. Second, that Jones released Jun and Park from any legal obligation to pay the Judgment, and thus Defendant is not obligated by the Policy to pay any coverage to anyone on their behalf. The Court will address each of these arguments in turn.

---

[3] For clarity's sake, the Court notes that this method of interpretation applies equally to "settlement agreements" as well as "releases." *See Convit*, 980 A.2d at 1120.

8

i.  Jones's Rights Under the Policy

Jones is not a party to the Policy. "Under well-settled principles of contract law, a stranger to a contract ordinarily has no rights under the contract and cannot sue to enforce it." *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 586 (E.D. Va. 1992) (citing 2 Samuel Williston A Treatise on the Law of Contracts § 347 (3d ed. 1959). The issue the Court considers, then, is whether Jones has rights under the Policy as a result of the assignment provided in the Settlement Agreement.

The Settlement Agreement certainly provides that Jun and Park would assign their rights to Jones. Paragraph 3 of the Settlement Agreement provide that Jun and Park would "transfer and assign to [Jones] all claims, rights, Causes of Action they may have against any . . . insurers which [sic] arise from or are related to the facts set forth in the [Tort Action]." (D. Exs. C, D at 5.) Assuming, *arguendo*, that Jun and Park would have rights against Defendant arising from or related to the facts set forth in the Tort Action, they plainly agreed to assign those rights to Jones.

The Policy, however, expressly bars ABC's assignment of its rights or duties without Defendant's written consent. (D. Ex. B at 31 [Dkt. 23-2]). Specifically, the Policy states that "[ABC's] rights and duties under this policy may not be

9

transferred without our written consent," except in the case of death of a named insured, not relevant here.[4] *Id*. Nothing in the record shows that Defendant provided such written consent. As a result, any rights Jun and Park had pursuant to the Policy have not been assigned to Jones. Jones, therefore, does not have any rights under the Policy.

As Jones does not have rights under the Policy, whether as a party or an assignee, there are not any that Defendant could have breached. Accordingly, no reasonable trier of fact could find for Jones with respect to his breach of contract claim, and summary judgment in favor of Defendant is appropriate.

      ii.      <u>The Effect of the Settlement Agreement on Jun and Park's Liability</u>

As to Jun and Park's claim of breach of contract, the Court must determine whether, considering the Settlement Agreement, Jun and Park had any rights to collect from the Policy. Assuming, *arguendo*, that Jun and Park could collect under the Policy in absence of the Settlement Agreement, the issue is whether their execution of the Settlement Agreement in the Tort Action affected those rights.

---

[4] That Jun and Park could not assign to Jones any rights under the Policy is of no moment, as the Settlement Agreement expressly provides for such a circumstance. Paragraph 3(f), the operative assignment provision, assigns to Jones all rights under the Policy, but contains a second sentence: "[Jun and Park] make no representations, warranties, or promises about the existence or related viability of any such rights." (D. Exs. C, D.) Although the Settlement Agreement could have provided that Jun and Park represented that they, in fact, *could* assign Jones the relevant rights, it did not. As a result, Jones is without recourse in precisely this situation.

Pursuant to Paragraph 3(b) of the Settlement Agreement, Jones expressly agreed "not to execute on [the Judgment] against [Jun and Park] except to the extent that such execution may be satisfied by other insurers or entities as part of those claims, rights, or causes of actions [sic] transferred and assigned to [Jones] as part of [the Settlement Agreement]." (D. Exs. C, D). By its plain terms, then, the Settlement Agreement bars Jones from executing the Judgment, with a limited exception. That limited exception applies only when the Judgment may be paid by third parties, and then only if pursuant to any rights transferred to Jones by Jun and Park under the Settlement Agreement. That limited exception is not present here--as set forth above, Jun and Park did not transfer their rights under the Policy to Jones. Thus, the "execution [of the Judgment] may" *not* "be satisfied by other insurers or entities *as part of those* claims, rights, or causes of actions [sic] *transferred* and assigned to [Jones] as part of [the Settlement Agreement]." (D. Exs. C, D) (emphasis added). Accordingly, the exception to Jones's release of Jun and Park does not apply, and Jones released Jun and Park from any liability resulting from the Tort Action, pursuant to the first clause of Paragraph 3(b).

The Policy provides coverage to the insured only in certain instances. Relevant here, the Policy states that Defendant "will pay those sums that the insured becomes legally

11

obligated to pay as damages because of 'bodily injury,' 'property damage,' [or] 'personal injury' . . . to which this insurance applies. . . . No other obligation or liability to pay sums or perform acts or services is covered," with certain exceptions not applicable here. (D. Ex. B at 16 [Dkt. 23-2]) The insured must be *legally obligated* to pay a sum before the insured has a right to coverage under the Policy, as provided by its terms.

As set forth above, Jones released Jun and Park from any legal obligation to pay the Judgment. Because Jun and Park were not legally obligated to pay, Defendant is not obligated to do so either, pursuant to the Policy. Thus, Jun and Park have no rights against Defendant stemming from the Tort Action. As such, no reasonable trier of fact could find that Defendant has breached such a non-existing right. Accordingly, summary judgment in favor of Defendant as to Plaintiffs Jun and Park is appropriate.

**IV. Conclusion**

For these reasons, the Court will grant Defendant's Motion for Summary Judgment.

An appropriate Order will issue.

|  | /s/ |
|---|---|
| December 14, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |